# Richmond

## Virginia National Bank, Etc. v. Commonwealth of Virginia.

April 22, 1974.

Record No. 8274.

Present, Snead, C.J., I'Anson, Carrico, Cochran and Poff, JJ.

*T. Howard Spainhour; Conrad M. Shumadine (Kaufman, Oberndorfer & Spainhour; McGuire, Woods & Battle,* on brief), for appellant.

*Sally T. Warthen, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for appellee.

CARRICO, J., delivered the opinion of the court.

This case presents a novel question concerning the proper manner of ascertaining the value of bank stock for tax purposes. Essentially, the question turns upon whether the proceeds of certain "capital notes," issued by a bank to borrow funds for use in its banking business, should be included as additions to the capital of the bank, thereby increasing the value of its capital stock for tax purposes.

Code § 58-466 provides that the stockholders in a bank shall be assessed and taxed on their shares therein, although no tax is assessed upon the capital of the bank itself. Code § 58-470 requires a bank to report annually the names and addresses of its stockholders and the

number and actual value of the shares held by each stockholder. Code § 58-475 requires a bank to pay, on behalf of its stockholders, the taxes imposed pursuant to Code § 58-466.

Code § 58-471 prescribes the formula for ascertaining the value of bank stock for the purpose of assessing the tax against stockholders. Under the formula, "the total value of the shares of stock" of a bank is determined by "adding together its capital, surplus and undivided profits" and, from the sum so derived, deducting the assessed value of the bank's real estate otherwise taxed in this state. Then, "the actual value of each share" is declared to be "its proportion of the remainder" resulting from addition and deduction of the prescribed items.

In this case, Virginia National Bank (hereinafter, the Bank) in October, 1971, issued $25,000,000 in "capital notes" to increase "its capital funds . . . for use in its banking business." The notes bear interest at the rate of 7.80% and carry a maturity date of October 1, 1996. They are unsecured and, by their terms, are subordinate to "deposits and certain other liabilities" of the Bank.

When the Bank filed its return for the year 1972 to report the names and addresses of its stockholders and the value of its stock, as required by Code § 58-470, it reported capital of $20,600,000 (represented by the outstanding shares of capital stock at par value of $5.00 per share), surplus of $26,600,000, and undivided profits of $23,500,-000. After deducting the assessed value of its real estate otherwise taxed, the Bank reported the net taxable value of its stock at $54,-546,393.19. The State Department of Taxation audited the Bank's return and increased the capital figure by adding thereto the amount of the "capital notes" previously issued by the Bank. The amendment resulted in an additional tax assessment of $246,769.75.

Thereafter, the Bank filed in the trial court an application praying for correction of the assessment and abatement of the additional tax (Code §§ 58-1130 and -1140). The trial court heard the matter, ruled that the assessment was not erroneous, and denied the relief sought by the Bank. We granted a writ of error.

We are of opinion that the trial court erred in failing to correct the assessment as prayed by the Bank. The notes in question, notwithstanding that they are designated "capital notes," are nothing more than evidences of the Bank's indebtedness to outside creditors. While, as the Attorney General contends, the notes are, under certain federal regulations, considered capital for purposes such as computing lending limits and the amounts that may be invested in certain transactions, this is so only because the notes are subordinated to the Bank's obliga-

tions to depositors and to designated creditors. But because the notes may be considered capital for some purposes does not diminish their status as debt obligations of the Bank or convert them to capital for the tax purposes contemplated by Code § 58-471.

The formula prescribed by Code § 58-471 is directed to ascertainment of the "total value of the shares of stock" of a bank and the "actual value of each share of stock" therein by adding together three items of value—capital, surplus, and undivided profits. The stock value thus envisioned is not market value, as the Attorney General apparently contends, but the value of the proprietorship or equity of the stockholders. While the proceeds of the "capital notes" in question doubtless added to the cash account of the Bank and may have increased its *working* capital, the issuance of the notes correspondingly increased the liabilities of the Bank, not to its stockholders, but to outside creditors. The transaction did not, therefore, add anything to capital as "capital" is contemplated by Code § 58-471—the proprietorship or equity of the stockholders in the business.

Two matters appearing of record not only support our view but also answer many of the contentions now advanced by the Commonwealth. First, in the trial court, the Attorney General stated as follows:

> "Your Honor, the state will concede at the outset that the issuance of debt obligations has very little effect upon the actual value of the stock. It may be that the leverage that is obtained may have a minimal effect. But essentially your liabilities have gone up and your assets have gone up."

Second, there is in the record an exhibit in the form of a publication prepared by the State Department of Taxation. The publication, entitled "Taxation of Banks and Trust Companies in Virginia and Their Stockholders," bears the date of January 1, 1972, the same year for which the Bank's assessment was increased by the Department of Taxation in this case. Although intended as "a guideline of instructions" specifically related to the tax in question, the publication does not mention the term "capital notes" or otherwise indicate that they should be treated as capital for tax purposes. To the contrary, in explaining the operation of Code § 58-471 and in interpreting the meaning of the words "capital, surplus and undivided profits," contained in the Code section, the publication states:

> "Capital accounts represent the investment of the stockholders in the bank, that is to say, the claim of the stockholders against the

assets. Of course, in the event of liquidation, all *outside* claims must be satisfied in full before the stockholders receive any payment."

. . . .
"The net worth of a bank . . . is the difference between its assets and its liabilities to outside creditors. . . .

". . . Proprietorship, capital, and net worth are all synonymous terms. Proprietorship is the interest of the owners in the business. . . . When all liabilities to outside creditors are deducted from all assets of the bank . . . the resulting figure is the proprietorship, capital, or net worth of the bank . . . ."

The foregoing language leaves no doubt that the "capital notes" here involved, representing indebtedness to outside creditors, cannot be considered as additions to capital within the meaning of Code § 58-471. Accordingly, the judgment of the trial court will be reversed, and a final order will be entered deleting from the assessment in question the amount of the "capital notes" and abating from the tax assessed the sum of $246,769.75.

*Reversed and final judgment.*